UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM KELLER,          :     CIVIL NO. **1:06-0080**
            Plaintiff    :
                         :
     v.                  :     (Judge Conner)
                         :
JO ANNE B. BARNHART,     :     (Magistrate Judge Smyser)
Commissioner of Social   :
Security,                :
            Defendant    :
                         :

## REPORT AND RECOMMENDATION

The plaintiff has brought this action under the authority of
42 U.S.C. § 405(g) to obtain judicial review of the decision of
the Commissioner of Social Security denying the plaintiff's
claims for disability insurance benefits and supplemental
security income.

## I.   Procedural Background

The plaintiff applied for disability insurance benefits and
supplemental security income on May 17, 2004, alleging disability
since October 30, 2003, due to back and neck pain.  (Tr. 85-87).
The plaintiff requested a hearing after the state agency denied
his application.  (Tr. 69-74).  On September 15, 2005, the
plaintiff, represented by counsel, his wife, and a vocational

expert testified at a hearing before an administrative law judge
(ALJ).  (Tr. 24-65).  On October 3, 2005, the ALJ issued an
unfavorable decision.  (Tr. 12-21).

The Appeals Council subsequently denied the plaintiff's
request for review, making the ALJ's decision the final decision
of the Commissioner.  (Tr. 4-7).  42 U.S.C. § 405(g).  On January
11, 2006, the plaintiff filed this action for judicial review of
the Commissioner's final decision.  (Doc. 1).

## II.  Factual Background

The plaintiff was forty-two-years old at the time of his
alleged disability onset, making him a "younger" individual under
the Regulations.  (Tr. 19).  20 C.F.R. § 416.963(c).  He is
functionally illiterate and has past work experience as a roofer.
(Tr. 19, 30).  The plaintiff stopped working in October of 2003,
after he was involved in an automobile accident.  (Tr. 30).

On October 30, 2003, the plaintiff visited the emergency
room with complaints of neck pain and headaches after being in an
automobile accident.  (Tr. 142).  A physical examination detected
tenderness in the cervical and thoracic spine.  *Id*.  An x-ray of

the cervical spine found no evidence of fracture and "mild"
degenerative disc disease at C4-5 and C5-6.  (Tr. 148).  The
attending physician diagnosed cervical strain and headaches.
(Tr. 143).  The plaintiff was prescribed a pain medication and a
muscle relaxant and instructed to use a cervical collar and to
avoid heavy lifting for two days.  (Tr. 147).

A few days later, the plaintiff continued to report neck
discomfort and pain to Michael Montella, M.D., his primary care
physician.  (Tr. 163, 182).  On physical examination, the
plaintiff had full range of motion in the neck.  (Tr. 163).  Dr.
Montella noted that the October 2003 cervical spine x-ray was
normal.  *Id*.  Dr. Montella prescribed a Medrol dose-pak and told
the plaintiff to wean off of the cervical collar he had been
wearing.  *Id*.

A November 2003 cervical spine MRI showed mild degenerative
disc disease with associated posterior vertebral spondylosis and
disc bulging at C5-6 and C6-7 but no impressing on the spinal
cord.  (Tr. 214).  There was mild disc space narrowing at C5-6
with no disc herniation or significant spinal stenosis.  *Id.*

On December 10, 2003, Paul Horchos, D.O., examined the plaintiff at Dr. Montella's request.  (Tr. 159, 181).  Dr. Horchos described the plaintiff's cervical range of motion as "quite stiff and limited."  (Tr. 160).  Straight leg raising tests were negative on both legs, however, and the plaintiff's lower extremity strength was good.  *Id.*  Dr. Horchos prescribed muscle relaxants and recommended acupuncture to the cervical spine.  *Id*.

Less than two weeks later, the plaintiff told Dr. Horchos that he had received acupuncture and that it was "somewhat helpful" in reducing his muscle spasms.  The plaintiff also reported that the muscle relaxants were "very effective" at reducing his neck discomfort and spasms.  (Tr. 158).  Dr. Horchos' physical examination also showed improvement.  *Id*.  The plaintiff's sit to stand posture was "good;" his cervical posture was "slightly protracted" but "better than it was;" and side bending and rotation were "relatively full."  *Id*.  The plaintiff stated that he did want additional narcotics and Dr. Horchos recommended the plaintiff continue with the same medication and acupuncture program.  *Id.*

Over the next three months, the plaintiff's symptoms continued to improve with treatment.  (Tr. 153-57).  In addition to the acupuncture and medication, in February of 2004, Dr. Horchos administered a trigger point injection into the right superior trapezei.  (Tr. 154).  At a March of 2004 visit, the plaintiff reported that the acupuncture and trigger point injection significantly reduced his pain and rated his pain as a two out of ten.  (Tr. 153).  At that visit, Dr. Horchos noted "significant improvement," including reduced neck muscle spasms and greatly improved range of motion.  *Id.*

On April 28, 2004, however, the plaintiff returned to Dr. Horchos complainting of increased neck and shoulder pain; he rated his pain an eight out of ten.  (Tr. 151).  A physical examination was essentially unchanged since the last visit.  *Id.* Dr. Horchos opined that the plaintiff had possible cervical radiculitis at C5-6 and noted that he was considering an epidural steroid injection at that site.  *Id.*

On May 11, 2004, the plaintiff called Dr. Montella after a six month hiatus.  (Tr. 162).  He did not complain of neck pain but instead reported that he had gotten a tick on his neck while

5

hunting.  *Id.*  At a visit the following day, Dr. Horchos noted
that the plaintiff was doing better than the last time he had
seen him and that he had rated his pain as a two out of ten.
(Tr. 149).  The plaintiff reported that he was generally not
doing anything but "just relaxing."  He said that his neck acted
up when he tried to cut the grass or go turkey hunting.  *Id.*  Dr.
Horchos noted that a recent MRI of the plaintiff's thoracic spine
showed a small disc herniation at the T6-T7 level, but Dr.
Horchos opined that the it was "not significant" and not causing
the plaintiff pain.  *Id.*

    On June 22, 2004, Theodore Waldron, D.O., a state agency
physician, reviewed the evidence and opined that the plaintiff,
despite his impairments, could perform light work with some
postural and environmental limitations.  (Tr. 166-73).  Based on
his review of the medical record, Dr. Waldron found only
"partially credible" the plaintiff's claims that he could lift
nothing and could walk for only fifteen minutes.  (Tr. 171).

    In June and July 2004, the plaintiff underwent several
acupuncture sessions.  (Tr. 192-96).  Between sessions, he rated
his pain as no more a three out of ten; at the end of each

acupuncture session, he rated his pain as a one out of ten.  *Id.*

On September 1, 2004, the plaintiff returned to Dr. Montella, ten months after his last examination and four months after his last telephone call to the physician's office.  (Tr. 201).  The plaintiff reported "debilitating" neck and shoulder pain which resulted in difficulty sitting and standing.  *Id.*  On physical examination, Dr. Montella observed marked limitation in range of motion and marked spasticity in the neck.  *Id.*  Dr. Montella stated that the plaintiff was "disabled given his job as a roofer" and need for muscle relaxants.  *Id.*  Dr. Montella completed a medical source statement regarding the plaintiff work-related abilities, in which he opined that the plaintiff could not perform the lifting, sitting, standing, or walking requirements of sedentary work.  (Tr. 175-79).  20 C.F.R. §§ 404.1567(a), 416.967(a).

On November 15, 2004, the plaintiff returned to Dr. Horchos after a six month hiatus.  (Tr. 190).  The plaintiff reported that his neck pain was tolerable but increased with activity.  He had increased pain upon neck extension but good bilateral upper extremity strength.  *Id.*  Dr. Horchos opined that the plaintiff

7

had cervical facet syndrome and recommended a cervical facet joint injection after the plaintiff told him that he wanted to be a more active individual.  *Id.*

The following month, the plaintiff underwent a cervical facet joint injection.  (Tr. 183-84, 189).  On January 10, 2005, the plaintiff told Dr. Horchos that the injection had not decreased his pain.  (Tr. 188).  He reported his pain as a six out of ten, both before and after the injection.  *Id.*  On physical examination, the plaintiff had good range of motion in the neck and normal strength in the arms, and a good sit to stand posture.  *Id.*  Dr. Horchos observed significant tightness in several areas, consistent with symptoms of spasmodic torticollis Dr. Horchos continued to prescribe muscle relaxants and recommended a botox injection to address the spasmodic torticollis.  *Id.*

On January 14, 2005, Dr. Horchos wrote a letter to the plaintiff's attorney in which he opined that the plaintiff was unable to return to full or part-time work.  (Tr. 186-87).  In February 2005, Dr. Horchos administered a botox injection.  (Tr. 185).  On June 27, 2005, the plaintiff reported that his neck

8

pain had improved after the botox injection but that some pain
had returned over the previous week.  (Tr. 221).  Dr. Horchos
noted that the injection was starting to wear off, as the
plaintiff was experiencing some tightness but had "relatively
good flexibility of his neck."  *Id.*  Dr. Horchos noted good range
of motion in the neck and a good sit to stand posture.  Dr.
Horchos recommended a second botox injection due to the
effectiveness of the first.  *Id.*  The plaintiff underwent the
second botox injection in July of 2005.  (Tr. 216).

     In July of 2005, the plaintiff reported developing a severe
low back pain while mowing the lawn.  (Tr. 198, 219).  He had no
complaints of neck pain.  *Id.*  On physical examination, the
plaintiff had a slow and antalgic gait, muscle spasms, and
limited lumbar range of motion.  (Tr. 219).  Straight leg raising
was negative bilaterally.  Dr. Horchos diagnosed low back pain
with no radicular symptoms and treated the plaintiff's back pain
conservatively, with muscle relaxants and nonsteroidal anti-
inflammatory drugs.  *Id.*  A lumbar spine MRI was normal, showing
no disc herniations or significant central spinal stenosis.  (Tr.
208).

On August 5, 2005, the plaintiff returned to Dr. Horchos for
a follow-up of his low back pain; he again did not mention neck
pain.  (Tr. 217).  The plaintiff reported lingering back pain
despite initial relief from medication.  Dr. Horchos also noted
some tenderness over the left posterior superior iliac spine;
limited range of motion in the back; but no tenderness over the
lumbar spine; normal strength and sensation; and negative
straight leg raising.  Dr. Horchos recommended a left sacroiliac
joint injection.  *Id.*

Two weeks later, the plaintiff reported back and neck pain
to Dr. Horchos.  (Tr. 216).  The plaintiff stated that the recent
botox injection had not significantly reduced his neck pain,
although Dr. Horchos noted that it had only been a month after
the injection, and that, given the success of the previous
injection, the plaintiff would see a significant benefit once the
medication became active.  *Id.*  The plaintiff had tightness but
good range of motion in the neck.  *Id.*  Dr. Horchos also observed
some tightness in the sacroiliac region, and noted that a
sacroiliac injection would soon be administered.  *Id.*

At the September 2005 hearing, the plaintiff testified that

his pain was a five out of ten on good days and a ten out of ten

on bad days.  (Tr. 46).  He testified that he could not vacuum,

take out the trash, or lift so much as a gallon of milk.  (Tr.

32-33).  He testified that the recent low back pain he had

experienced was due to his stepping into a hole in June 2005

while putting away a lawnmower.  (Tr. 37, 47).

After the ALJ issued her unfavorable decision, the plaintiff

submitted to the Appeals Council a deposition from Dr. Horchos

taken on October 12, 2005, less than one month after the

administrative hearing.  (Tr. 222).  In the deposition, Dr.

Horchos stated that the plaintiff's neck injury had improved,

such that Dr. Horchos had not imposed any work-related

limitations, within five months of the October 30, 2004

automobile accident.  (Tr. 265-67).  Dr. Horchos also stated that

the plaintiff's condition had continued to improve, despite ups

and downs, through August 2004.  (Tr. 268-69).  Dr. Horchos

characterized his treatment of the plaintiff as conservative in

nature, confirming that he had never referred him to a

neurologist or orthopedic surgeon.  (Tr. 280).  He also confirmed

that he had been paid for the January 14, 2005 letter, in which

he opined that the plaintiff was unable to work, by the

11

plaintiff's personal injury lawyer.  (Tr. 186-87, 285-86).  Dr.
Horchos maintained his opinion that the plaintiff was unable to
return to his past work as a roofer and stated that he would have
difficulty "sitting or looking over a computer for a prolonged
period of time."  (Tr. 255-56).


**III.  Disability Determination Process**

     The Commissioner has promulgated regulations creating a
five-step process to determine if a claimant is disabled.  The
ALJ must sequentially determine:  (1) whether the claimant is
engaged in substantial gainful activity; (2) whether the claimant
has a severe impairment; (3) whether the claimant's impairment
meets or equals a listed impairment; (4) whether the claimant's
impairment prevents him from doing past relevant work; and (5)
whether the claimant's impairment prevents him from doing any
other work.  20 C.F.R. §§ 404.1520, 416.920.


     The ALJ determined that: (1) the plaintiff has not engaged
in substantial gainful activity since his alleged disability
onset date; (2) the plaintiff's back and neck pain are severe;
(3) plaintiff's severe impairments do not meet or equal a listed
impairment; (4) the plaintiff can not perform his past relevant

work; (5) and the plaintiff has the residual functional capacity
to perform unskilled light work.  (Tr. 14-20).  The vocational
expert testified that a significant number of jobs existed in the
national economy for someone with the plaintiff's residual
functional capacity, including assembly worker, packager, and
non-construction laborer.  (Tr. 20).  Thus, the ALJ concluded
that the plaintiff was not disabled under the Act.  *Id.*  20
C.F.R. §§ 404.1520(c), 416.920(c).

## IV. Discussion

     The plaintiff's argument on appeal is that the ALJ
"committed reversible error in finding the substantial and
competent evidence of record insufficient to establish the
plaintiff could not engage in substantial gainful employment as
defined by the Social Security Act."  (Doc. 4, pp. 9-10).  This
argument must be rejected in that it appeals to a standard of
review that is not consistent with the statutory standard of
review under 42 U.S.C. § 405(g).

     When reviewing a decision of the Commissioner denying
disability benefits, the court must determine whether the denial

13

is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The plaintiff argues also that the case should be remanded for consideration of new evidence, namely, Dr. Horchos' October 12, 2005 deposition.  (Tr. 223-94).  The plaintiff does not specify which testimony in Dr. Horchos' seventy-one page deposition would be material but instead contends it would "be as if he testified live before the ALJ."[1]  (Doc. 4 at 18).

A remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted where the evidence is new, material, and the plaintiff

---

[1] The plaintiff points only to what he calls Dr. Horchos' "additional diagnosis of spasmadic torticollis," which, the plaintiff argues, would lend support to the plaintiff's complaints of chronic pain. (Doc. 4 at 18; Tr. 249-250).  This diagnosis is not new, however.  On January 10, 2005, Dr. Horchos noted symptoms of spasmodic torticollis, for which he recommended muscle relaxants and a botox injection.  (Tr. 188).

14

has shown good cause for the failure to incorporate it in a prior proceeding. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Dr. Horchos' deposition does not meet that standard. First, it is not new. As the Commissioner points out, evidence is not "new" if it was "in existence *or available* to the claimant at the time of the administrative proceeding (emphasis added)." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990), or if it is cumulative of other evidence in the record. *Szuback v. Sec'y of Health and Human Serv.*, 745 F.2d 831, 833 (3d. Cir. 1984). Here, the plaintiff's representative could have scheduled the deposition earlier so that it could have been submitted to the ALJ. The deposition was cumulative in that it merely reiterated the conclusory January 2005 opinion that was already included in the record. Second, the deposition was not material. Evidence is material if it is likely to have changed the outcome of the ALJ's decision. *Szuback*, 745 F.2d at 833. The deposition contains nothing that would have likely changed the ALJ's decision. On the contrary, Dr. Horchos' testimony that he had not imposed work-related limitations in March and August 2004, but had later opined that the plaintiff was unable to work after being paid for an opinion letter, both undermined Dr. Horchos' credibility regarding that January 2005 opinion and revealed that

15

the opinion did not reflect twelve consecutive months of disability.  (Tr. 267-68, 285-86).  Third, the plaintiff did not show good cause for failing to submit Dr. Horchos' deposition to the ALJ.  The plaintiff brief offers no explanation for why he could not have scheduled Dr. Horchos' deposition before the administrative hearing.  Thus, Dr. Horchos' deposition does not warrant a remand.

**V.  Conclusion**

On the basis of the foregoing, it is recommended that the appeal of the plaintiff be denied.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: June 7, 2006.

16